IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 91-20076-KHV |
| GEOFFREY ROSE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On November 6, 1991, a grand jury returned an indictment which charged Geoffrey Rose with possession with intent to distribute marijuana, possession of an unregistered firearm and unlawful storage of explosive material. This matter is now before the Court on defendant's <u>Motion To Dismiss For Post-Indictment Delay And A Violation Of Defendant's Right To A Speedy Trial</u> (Doc. #15) filed May 10, 2006 and <u>Motion To Review Detention Order</u> (Doc. #22) filed June 7, 2006.

### Background

On June 8 and 13, 2006, the Court held an evidentiary hearing on the motions. Based on the evidence presented at the hearing, the Court finds as follows:

On January 24, 1990, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF"), Drug Enforcement Agency, Johnson County Sheriff's Department and Merriam Police Department executed a search warrant at 6333 Craig Road in Merriam, Kansas, the residence of Gregory Rose and Geoffrey Rose, who are brothers. The agents recovered weapons, explosives and a marijuana-growing operation. Both brothers remained at the house during the execution of the warrant, and officers did not arrest them

after the search.

Two days later, attorney Carl Cornwell contacted Assistant United States Attorney ("AUSA") Shawn Streepy and requested the opportunity to voluntarily surrender the Rose brothers if a grand jury returned an indictment. On May 29, 1990, Cornwell again contacted Streepy to set up a meeting to discuss the case. Streepy sent defendants a proposed proffer letter dated June 29, 1990, which they did not return or accept. On September 10, 1990, Cornwell sent another letter to Streepy to determine whether any AUSA was assigned to the case.

In about February of 1991, defendants moved to New Mexico. On November 6, 1991, nearly two years after the search warrant was executed, a grand jury indicted defendants. On motion of the United States, the Court sealed the indictment.[1] On November 7, 1991, a warrant was issued for defendants' arrest, and arrest warrant was entered in the National Crime Information Center ("NCIC") database. Agents unsuccessfully attempted to locate defendants. In or before April of 1992, Deputy United States Marshal Matt Cahill obtained court orders for telephone records, to try to learn where defendants had moved. From 1992 until February 17, 2006, Cahill continued to check various databases in attempt to find defendants. The ATF file showed one attempt to locate defendants in 1991, five attempts in 1992, five attempts in 1993, three attempts in 1994, three attempts in 1995, three attempts in 1996, one attempt in 1997, two attempts in 1998, three attempts in 1999, four attempts in 2000, two attempts in 2003 and little or no activity in 2004 and 2005. The file documented attempts to find defendants on about 34 occasions after the indictment. Between May 7, 1992 and August 30, 1993, ATF Special Agent Herbert

---

[1] Defendants apparently had no knowledge of the indictment.

Drake made six attempts to locate defendants at their former residence in Merriam, Kansas. Between August 25, 1992 and February 6, 1997, Drake made 16 attempts to locate defendants "through contacts with their friends or acquaintances."[2] Between February 18, 1994 and June 13, 2003, Cahill and three different ATF agents made 16 attempts to locate defendants through driver's license bureaus in various states.

While living in New Mexico, Gregory Rose researched and adopted the name of a deceased child, William Verdin, who would have been approximately the same age as Rose. Upon arrest, Gregory Rose told an ATF agent that he had obtained a driver's license and social security card under William Verdin's name, and that he had a vehicle registered under this name. While living in New Mexico, Geoffrey Rose used the name Lee Verdin. Agents did not find any identification in the name of Lee Verdin. The community of Datil, New Mexico, knew defendants as William and Lee Verdin. During this time, defendants' mother lived at the residence in Merriam, Kansas which agents had searched on January 24, 1990. Mrs. Rose worked for Judge William Cook in the Wyandotte County Courthouse and retired around 1994. Believing that Mrs. Rose would be uncooperative, and not wishing to alert her that law enforcement was searching for defendants, Cahill never attempted to speak directly with Mrs. Rose regarding the whereabouts of defendants. Cahill testified that he periodically drove by the residence, particularly around holidays, more than 20 times. He stated that he did not file a written report if he had nothing to report. Cahill testified that for some time after the indictment, officers from the Johnson County Sheriff's Office picked up trash at Mrs. Rose's residence and periodically surveilled the house.

---

[2] The record sheds no light on the nature of these attempts.

In late 2005 or early 2006, at Cahill's request, the ATF turned the case over to the USMS. In January of 2006, Cahill located defendants' residence in Datil, New Mexico, where they had resided for eight years. Cahill did so by using "garden variety tried and true" investigative techniques which had been available to law enforcement for decades. On February 17, 2006, agents obtained consent to search defendant's residence in New Mexico and found firearms, weapons, body armor, explosive material, a marijuana-growing operation (including 36 marijuana plants), $2,500 and gold and silver coins. Agents arrested both Gregory Rose and Geoffrey Rose.

On February 21, 2006, the U.S. Attorney filed a motion to unseal the indictment, which the Court granted. On February 22, 2006, in the District of New Mexico, The Honorable Richard L. Puglisi held a detention hearing for each defendant. Judge Puglisi remanded each defendant into custody and ordered him committed to the District of Kansas. Defendant seeks dismissal of the indictment, arguing that the delay between indictment and arrest violates his right to a speedy trial.

## Analysis

### I.   Motion To Dismiss Indictment

Defendant asserts that the 15-year delay between the indictment and his arrest violates his Sixth Amendment right to a speedy trial. Specifically, defendant argues that the delay severely damaged his ability to defend himself because vital witnesses cannot be located, evidence has been destroyed and memories have faded.

Under the Sixth Amendment to the United States Constitution, an accused shall enjoy the right to a speedy trial. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four factors to consider when determining whether defendant has been deprived of his right to a speedy trial: (1) length

of delay; (2) reason for delay; (3) defendant's assertion of the right; and (4) prejudice to defendant. When an indictment has been sealed, the U.S. Attorney bears the burden to bring the case to trial in a speedy fashion. United States v. Shelton, 820 F. Supp. 461 465 (W.D. Mo. 1992).

### A. Length Of Delay

The length of delay is a triggering mechanism. Absent delay which is presumptively prejudicial, the Court need not examine the remaining three factors. See United States v. Hill, 197 F.3d 436, 443-44 (10th Cir. 1999). The length of delay which qualifies as "presumptively prejudicial" necessarily depends upon the peculiar circumstances of each case. See id. at 530-31. The Supreme Court has noted that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992). The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first. Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004) (citing United States v. Marion, 404 U.S. 307, 320-21 (1971)), cert. denied, 126 S. Ct. 61 (2005).

Under the first factor, defendant argues that a post-indictment 14-year delay is presumptively prejudicial. The government cites Doggett, 505 U.S. at 652, for the same proposition, but notes that the Second Circuit held a 25-month delay was not presumptively prejudicial, United States v. Jones, 91 F.3d 5, 9 (2d Cir. 1996), and the Fifth Circuit held that a delay of three years and nine months was not presumptively prejudicial because the government had diligently pursued the defendant, United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir 2003).

Here, defendant was indicted on November 6, 1991, and arrested on February 16, 2006, more than 14 years (171 months) after indictment. The length of delay is presumptively prejudicial so as to

trigger analysis of the remaining three factors. See Doggett, 505 U.S. at 652 (extraordinary eight and one-half years between indictment and arrest triggers speedy trial enquiry); Jackson v. Ray, 390 F.3d 1254, 1261 (10th Cir. 2004) (more than four-year delay far exceeds bare minimum for judicial examination of claim). Because of the extraordinary length of the delay, this factor weighs heavily against the government.

### B.     Reason For The Delay

The government bears the burden to explain the reason for delay. United States v. Anderson, 185 F.3d 875, 1999 WL 393658 (10th Cir. June 16, 1999). In Barker, the Supreme Court noted that courts should assign different weights to this factor based on the nature of the reasons offered by the government. Barker, 407 U.S. at 531. A deliberate attempt to delay trial in order to hamper the defense should be weighed heavily against the government. Id. A more neutral reason, such as negligence, should be weighed less heavily but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the government rather than with defendant. Id.

Defendant argues that the second factor, the reason for delay, weighs against the government because the delay resulted from negligence on the government's part. Specifically, defendant contends that (1) the government did not make reasonable efforts to locate him, and (2) had the indictment been unsealed, he would have turned himself in. The government argues that under the Speedy Trial Act, 18 U.S.C. § 3161(h)(3), the period of time when a defendant is "absent or unavailable" is excluded from speedy trial calculations. The government admits that the speedy trial calculation is not directly relevant here, but argues that the same principle applies – that because defendant was a fugitive, the delay is attributable to him, not the government. The government argues that the delay between indictment and arrest occurred because defendant knew that charges would be forthcoming and fled the jurisdiction to

avoid prosecution. The government points out that (1) defendant assumed a fictitious name; (2) defense counsel knew that the United States intended to pursue charges, and (3) defendant never contacted officers or agents to verify that no charges were pending. The government also notes that credit checks of defendant would not have revealed his location because defendant did not have a job, and that the mailing address which the U.S. Marshals found was actually a mail drop location.

The government must make reasonable but not heroic attempts to locate a fugitive defendant. Anderson, 1999 WL 393658, at *3. Here, evidence supports the government's contention that defendant may have been avoiding arrest. Defendant changed his name and obtained a driver's license and social security card under an assumed name, making him difficult to locate. On the other hand, the government never responded to defendant's offer to turn himself in. The government did not approach defendant's mother to inquire about his location, and its efforts to find defendant were lackadaisical at best. In fact, once the ATF turned over the case to the USMS, and Cahill intensified the effort to locate defendant, he did so within about 30 days – in spite of defendant's new identity, using unsophisticated law enforcement techniques which were available throughout the entire time defendant was a fugitive. In 1992 and 1993, law enforcement diligently pursued defendant as part of a multi-agency task force. The record, however, shows that from 1994 through 2005, law enforcement made only perfunctory efforts to locate defendant. During this 11-year period, the government was negligent in trying to apprehend defendant. The weight given to government negligence compounds over time as the presumption of evidentiary prejudice grows. Jackson, 390 F.3d at 1262 (quoting Doggett, 505 U.S. at 657). On this factor, the balance weighs heavily in defendant's favor. See, e.g., United States v. Brown, 169 F.3d 344, 349-50 (6th Cir. 1999) (five and one-half year delay weighs in favor of dismissal when government did not exercise reasonable diligence in

locating defendant and did not contact defendant's attorney so that he could surrender defendant to authorities).

### C. Defendant's Assertion Of His Right To A Speedy Trial

Defendant argues that he could not assert his right to a speedy trial because he had no knowledge of the sealed indictment. Defendant contends that since his arrest, he has properly and timely asserted this right. The government argues that defendant knew about the potential charges and could have contacted law enforcement to enquire about an arrest warrant, and because he did not do so, this factor weighs against him. The government's argument presumes that a defendant has an obligation to determine that a sealed indictment has been returned against him.

When a defendant knows of his indictment long before his arrest, but fails to take action to obtain a speedy trial, the third factor weighs heavily against him. Anderson, 1999 WL 393658 at *4 (citing Doggett, 505 U.S. at 653). That is not this case. Defendant in this case did not know that an indictment had been returned or that the government considered him a fugitive. Indeed, the indictment was sealed and the government did not respond to counsel's attempt (in September of 1990) to determine whether an AUSA was assigned to the case. Moreover, through counsel, defendant offered to voluntarily surrender if indicted. The government never responded to this offer. Considering defendant's lack of knowledge about the sealed indictment, he should not be taxed "for invoking his speedy trial right only after his arrest." Doggett, 505 U.S. at 654. Furthermore, within six weeks of his arrest, defendant asserted his right to a speedy trial by filing the current motion. This factor does not weigh against him.

### D. Prejudice To Defendant

Prejudice to defendant is one of the most critical factors. Prejudice should be assessed in the light

of the interests of defendant which the speedy trial right was designed to protect. Barker, 407 U.S. at 532. The Supreme Court has identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. (citations omitted). Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. Id. This case involves only the third type of harm.

In Doggett, the Supreme Court recognized that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify." 505 U.S. at 655. In a habeas review, the Tenth Circuit noted that in cases of extreme delay, a defendant need not present specific evidence of prejudice and may instead rely of the presumption of prejudice. Jackson, 390 F.3d at 1263.

Defendant argues that the fourth factor, prejudice by the delay, weighs in his favor. Defendant argues that he is prejudiced because (1) Cornwell, his attorney in 1990, destroyed his original file; (2) the location of a vital witness who took responsibility for the firearms in defendant's residence is unknown; (3) evidence can no longer be tested; and (4) unidentified witnesses have retired, been transferred or moved.

The government responds that because the reason for the delay is attributable to defendant, there can be no presumption of prejudice. The government also contends that to establish impairment to defendant's defense, he must allege that prejudice was suffered, claim witnesses were unavailable and describe the substance of the witnesses' testimony. See United States v. Munoz-Amado, 182 F.3d 57, 63 (1st Cir. 1999). In addition, the government points out that testimony of the witness who took responsibility for the firearms in defendant's residence was obtained under oath before the grand jury.

According to the government, ownership of the weapons is irrelevant and not exculpatory, because defendant is charged with possession. The government also argues that retirement and relocation by other witnesses do not equate to loss of memory or loss of exculpatory evidence, and the original case agent recalls the investigation.

Here, the length of delay is extraordinary. The government's efforts to locate defendant between 1994 and 2005 can best be described as minimal and perfunctory. The Court concludes that prejudice is presumed and defendant need not present evidence of actual prejudice. Balancing the Barker factors – in light of the 14-year delay between indictment and arrest, the government's negligence in apprehending defendant, defendant's lack of knowledge about the sealed indictment and the prejudice that must be presumed from such a length delay – the Court sustains defendant's motion to dismiss the indictment.

## II.     Motion To Review Detention Order

Because the Court has concluded that the motion to dismiss the indictment should be sustained, defendant's motion to review the detention order is moot.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss For Post-Indictment Delay And A Violation Of Defendant's Right To A Speedy Trial (Doc. #15) filed May 10, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Review Detention Order (Doc. #22) filed June 7, 2006 be and hereby is **OVERRULED as moot**.

Dated this 27th day of June, 2006 at Kansas City, Kansas.

                                           s/ Kathryn H. Vratil
                                           KATHRYN H. VRATIL
                                           United States District Judge